```
 1                UNITED STATES DISTICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                      WESTERN DIVISION

 4        THE HON. R. GARY KLAUSNER, JUDGE PRESIDING

 5

 6   UNITED STATES OF AMERICA,      )
                                    )
 7               PLAINTIFF,         )
              vs.                   )   CR 07-1231-RGK
 8                                  )
     KELVIN MELGAR,                 )
 9               DEFENDANT.         )
     _____)

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14

15                 LOS ANGELES, CALIFORNIA

16

17              MONDAY, FEBRUARY 11, 2008

18

19

20

21

22                               LYNNE SMITH
                                 OFFICIAL COURT REPORTER
23                               ROYBAL FEDERAL BUILDING
                                 255 EAST TEMPLE STREET
24                               ROOM 181-A
                                 LOS ANGELES, CALIFORNIA
25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:    OFFICE OF THE UNITED STATES ATTORNEY
                          BY:  SCOTT GARRINGER
 3                        ASSISTANT UNITED STATES ATTORNEY
                          UNITED STATES COURTHOUSE
 4                        312 N. SPRING STREET
                          LOS ANGELES, CALIFORNIA 90012
 5

 6

 7

 8   FOR THE DEFENDANT:    IVAN KLEIN

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          MONDAY, FEBRUARY 11, 2008; LOS ANGELES, CALIFORNIA
 2                              -oOo-
 3          THE CLERK:  United States of America versus Kelvin
 4   Alexander Melgar.  Counsel, please state your appearances.
 5          MR. GARRINGER:  Good afternoon, Your Honor.  Scott
 6   Garringer on behalf the United States.
 7          MR. KLEIN:  Good afternoon, Your Honor.  Ivan
 8   Klein for Kelvin Melgar.  Your Honor, he's in a wheelchair.
 9   Is it all right if he remains seated there at the microphone
10   and I'll just sit beside him.
11          THE COURT:  That sounds fine.  Thank you, counsel.
12          Okay.  Mr. Melgar, in this particular matter, it
13   has been indicated to the court that you wish to enter a
14   plea of guilty in this matter to Count 4 of the indictment.
15   Is that what you intend to do?
16          THE DEFENDANT:  Yes, Your Honor.
17          THE COURT:  Before you do that, I want to talk to
18   you a little bit.  First of all, you understand you have a
19   right against self-incrimination.  Nobody can force you to
20   plead guilty.  If you plead guilty today, you'll be giving
21   up that right against self-incrimination.  Have you
22   discussed that right with your attorney?
23          THE DEFENDANT:  Yes, Your Honor.
24          THE COURT:  Do you understand that right?
25          THE DEFENDANT:  Yes, Your Honor.
```

```
 1              THE COURT:  And you give up that right?
 2              THE DEFENDANT:  Yes, Your Honor.
 3              THE COURT:  Before I can take your plea, I have to
 4   make a finding that you understand exactly what you're doing
 5   and it's what you want to do.  So I'm going to have to ask
 6   you some questions along those lines.  I'm going to ask you
 7   to remain seated but we'll have you raise your right hand to
 8   the best of your ability and be sworn in.
 9              (DEFENDANT SWORN)
10              THE COURT:  Now, what is your true legal name?
11              THE DEFENDANT:  Kelvin Alexander Melgar.
12              THE COURT:  Do you ever go by any other name other
13   than that?
14              THE DEFENDANT:  No, Your Honor.
15              THE COURT:  What's your address, where do you
16   live?
17              THE DEFENDANT:  I'm staying at 3909 Loland
18   (phonetic), Los Angeles, California 90065.
19              THE COURT:  Your age?
20              THE DEFENDANT:  28, will be 29.
21              THE COURT:  Education.  How much schooling have
22   you had?
23              THE DEFENDANT:  High school graduate.
24              THE COURT:  You've been able then to read and
25   understand, and I'm asking you today, to read and understand
```

```
 1   the 16-page document that's entitled plea agreement.
 2               THE DEFENDANT:  Yes, Your Honor.
 3               THE COURT:  And you've gone over that with your
 4   attorney.
 5               THE DEFENDANT:  Yes, Your Honor.
 6               THE COURT:  You understand it fully?
 7               THE DEFENDANT:  Yes, Your Honor.
 8               THE COURT:  Let me ask you some background
 9   questions.  Is there any history of mental illness or
10   addiction in your background?
11               THE DEFENDANT:  No, Your Honor.
12               THE COURT:  Are you presently under the influence
13   of anything at all that might affect your ability to
14   understand what we're doing today?
15               THE DEFENDANT:  No, Your Honor.
16               THE COURT:  And if I ask you anything today that
17   you don't understand, will you call it to my attention so I
18   can explain it to you?
19               THE DEFENDANT:  Yes, Your Honor.
20               THE COURT:  Now, they have alleged a violation of
21   Title 21 of United States Code Section 846.  I'm going to
22   ask the government at this time if they could tell us what
23   the elements of the offense are that they will have to
24   present at trial in order to sustain a conviction in this
25   matter.
```

1        And then when they're through, after they've said
2   what those elements are, they're going to tell you what
3   facts they intend to present as evidence.  So I want you to
4   listen very carefully.
5        Counsel.
6        MR. GARRINGER:  Thank you, Your Honor.  As set
7   forth in paragraph 3 of the plea agreement, in order for the
8   defendant to be guilty of Count 4 which charges a violation
9   of 21 USC Section 846, the following must be true.
10       Number one, beginning on a date unknown and
11  continuing to on or about December 12, 2006 in Los Angeles
12  County, there was an agreement between two or or more
13  persons to possess with intent to distribute or distribute
14  more than 50 grams of methamphetamine, actual, a Schedule 2
15  controlled substance in violation of Title 21 United States
16  Code Section 841(a)(1).
17       And two, the defendant became a member of the
18  conspiracy knowing of at least one of its objects and
19  intending to help accomplish it.  Moreover, in order for
20  the defendant to be subject to the statutory maximum and
21  statutory minimum sentences set forth in the plea agreement,
22  the government must prove beyond a reasonable doubt that
23  defendant conspired to distribute at least 50 grams of
24  actual methamphetamine.
25       THE COURT:  Okay.  So you understand what elements

```
 1   the government would have to show before they could sustain
 2   a conviction in this matter.
 3            THE DEFENDANT:  Yes, Your Honor.
 4            THE COURT:  Counsel, can you state what facts you
 5   would present at trial if you went to trial.
 6            MR. GARRINGER:  Yes, Your Honor.  As set forth in
 7   paragraph 10 of the plea agreement, the government would
 8   prove the following facts beyond a reasonable doubt.
 9   Beginning prior to August 29, 2006 and continuing to
10   December 12, 2006 within the Central District of California,
11   defendant and Fernando Morales entered into an agreement to
12   knowingly and intentionally distribute and to possess with
13   intent to distribute more than 50 grams of methampetamine,
14   actual, a schedule 2 controlled substance.  Defendant became
15   a member of this agreement knowing of its objects and
16   intending to help accomplish them.
17            On August 29, 2006 within the Central District of
18   California, defendant knowingly and intentionally sold to a
19   confidential source with the Federal Bureau of
20   Investigation, the FBI, 61.5 grams of actual methamphetamine
21   for $2,400.
22            On August 29, 2006 after arranging by telephone
23   and in person to sell the confidential source four-ounces of
24   methamphetamine, defendant met the confidential source at
25   his residence located at 5511 Sierra Vista Avenue in Los
```

```
 1   Angeles, California, an encounter that was surveilled by FBI
 2   agents.
 3           During the meeting, the confidential source gave
 4   defendant the $2,400 to which they had agreed and defendant
 5   left to obtain the methamphetamine.  Defendant and
 6   co-defendant Morales later returned to the residence to meet
 7   with the confidential source and defendant and co-defendant
 8   Morales gave the confidential source a blue napkin
 9   containing 104.3 grams of a mixture or substance containing
10   an equitable amount of methamphetamine.  DEA laboratory
11   analysis of the methamphetamine determined that it contained
12   61.5 grams of actual methamphetamine.
13           On December 12, 2006 within the Central District
14   of California defendant knowingly and intentionally sold to
15   the confidential source 56.5 grams of actual methamphetamine
16   for $2,200.
17           On December 12, 2006 after arranging by telephone
18   to sell the confidential source four ounces of
19   methamphetamine, defendant met with confidential source at
20   the residence located at 5511 Sierra Vista Avenue in Los
21   Angeles, California, an encounter that was surveilled by FBI
22   agents.  During the meeting, the confidential source gave
23   defendant the $2,200 to which they had agreed and defendant
24   left to obtain the methamphetamine.
25           Defendant and co-defendant Morales later returned
```

```
 1   to the residence to meet with the confidential source and
 2   defendant and co-defendant Morales gave the confidential
 3   source a clear plastic bag containing 110.9 grams of a
 4   mixture or substance containing an equitable amount of
 5   methamphetamine.  DEA laboratory analysis of the
 6   methamphetamine determined that it contained 56.5 grams of
 7   actual methamphetamine.
 8           THE COURT:  Thank you, counsel.  The government
 9   has stated the facts that they say they would have presented
10   if they did go to trial.  Did you  you understand that?
11           THE DEFENDANT:  Yes, Your Honor.
12           THE COURT:  Do you admit those facts to be true?
13           THE DEFENDANT:  Yes, Your Honor.
14           THE COURT:  Now, this is a type of an offense,
15   violation of Title 21 of the United States Code Section 846,
16   that could be punished by life imprisonment, a lifetime
17   period of supervised release, a fine of $4 million or twice
18   the gross gain or loss resulting from the offense, whichever
19   is greater, and a mandatory special assessment of $100.
20           There's also under this section a mandatory
21   minimum sentence of ten years imprisonment.  You understand
22   the possible maximum sentences in this case.
23           THE DEFENDANT:  Yes, Your Honor.
24           THE COURT:  You understand there would be a
25   mandatory minimum sentence in this case.
```

1        THE DEFENDANT:  Yes, Your Honor.
2        THE COURT:  Now, supervised release is that period
3   of time where if you're confined in custody and you're
4   released on supervision.  If you violate the terms and
5   conditions of that supervision, you could be returned to
6   court and do additional time on that violation over and
7   above what you received originally.
8        Do you understand that?
9        THE DEFENDANT:  Yes, Your Honor.
10       THE COURT:  Now, if you happen to be on parole,
11  probation or supervised release on any other matter other
12  than this, your plea in this matter could result in a
13  violation of parole, probation or supervised release and
14  they could give you additional time on the other matter over
15  and above what you might get here.  You understand that.
16       THE DEFENDANT:  Yes, Your Honor.
17       THE COURT:  Your rights may be affected by your
18  plea such as your right to vote, as a U.S. citizen you have
19  a right to serve as a juror, your right to own a firearm,
20  your right to hold public office.  It could affect
21  citizenship, lead to deportation in some cases and it could
22  affect welfare rights such as food stamps for you or your
23  family.  Do you understand that?
24       THE DEFENDANT:  Yes, Your Honor.
25       THE COURT:  Now, I also want to make sure, and

1    we've talked about this before, I want to go over some of
2    the rights that you'll be giving up.  The most important
3    right is that you have a right to be presumed innocent until
4    and unless the government proves their case beyond a
5    reasonable doubt and the jurors would unanimously have to
6    agree upon your guilt before you could be found guilty.  If
7    you plead guilty, there's not going to be a trial.  You will
8    be found guilty on your own plea.  So you would be giving up
9    that right to be presumed innocent.  You understand and have
10   gone over that right with your attorney.
11           THE DEFENDANT:  Yes, Your Honor.
12           THE COURT:  Do you wish to waive and give up that
13   right?
14           THE DEFENDANT:  Yes, Your Honor.
15           THE COURT:  Counsel joins?
16           MR. KLEIN:  Counsel joins.
17           THE COURT:  There are some other rights that are
18   attached to that trial that you have a right to and that is
19   you have right to a public trial.  You have a right to have
20   a speedy trial.  You have a right to have an attorney at all
21   stages of the proceedings.  You have a right to see, hear
22   and cross-examine the witnesses the government would call to
23   prove their case against you.
24           You would have a right to subpoena witnesses on
25   your own behalf to testify for you using the court's power

1  to get those witnesses here into court.
2         You have a right to present defenses in your own
3  behalf.  You have a right at trial to take the stand and
4  testify on your own behalf if you wish or remain silent, not
5  take the stand and nobody could derive any adverse inference
6  from the fact you did not testify.
7         All these rights obviously you'll be giving up
8  because there's not going to be a trial.  Do you understand
9  that?
10         THE DEFENDANT:  Yes, Your Honor.
11         THE COURT:  And do you understand these rights?
12         THE DEFENDANT:  Yes, Your Honor.
13         THE COURT:  Do you give up these rights?
14         DEFENSE COUNSEL:  Yes, Your Honor.
15         THE COURT:  Counsel joins again?
16         MR. KLEIN:  Yes.
17         THE COURT:  There is a plea negotiation or a plea
18  agreement that I have here consisting of about 16 pages.
19  There's a lot spelled out in there.  I just want to make
20  sure we're all on the same page.  I'm going to ask the
21  government to state very briefly the significant obligations
22  the defendant has under this agreement and that the
23  government has under this agreement.
24         MR. GARRINGER:  Yes, Your Honor.  Under this plea
25  agreement the defendant has agreed to plead to Count 4 of

1  the indictment and the government would agree to dismiss the
2  remaining counts as against this defendant.
3          The parties have entered into certain sentencing
4  stipulations in this plea agreement; base offense level of
5  32 and under proper circumstances an acceptance of
6  responsibility reduction of minus three points as well.
7          Also, this plea agreement contains certain
8  stipulations aimed at defendant.  Potential for a safety
9  valve and the parties anticipate conducting the safety valve
10 offer.
11         Also, the government does agree to recommend the
12 low end of the sentencing guidelines under certain
13 circumstances as well as, I believe I mentioned this, to
14 dismiss the remaining counts.
15         THE COURT:  Is that basically your understanding
16 of this plea agreement?
17         THE DEFENDANT:  Yes, Your Honor.
18         THE COURT:  At this time do you wish to enter into
19 a plea, this 16-page plea agreement as summarized by
20 counsel?
21         THE DEFENDANT:  Yes, Your Honor.
22         THE COURT:  Has anybody made any other promises to
23 you or threats or assurances or anything at all to get you
24 to plead guilty today that we have not discussed here in
25 court?

```
 1              THE DEFENDANT:  No, Your Honor.
 2              THE COURT:  You're doing this, pleading guilty
 3   freely and voluntarily because you feel it's in your best
 4   interest?
 5              THE DEFENDANT:  Yes, Your Honor.
 6              THE COURT:  Is there any questions you want to ask
 7   the court before I take your plea?
 8              THE DEFENDANT:  No, Your Honor.
 9              THE COURT:  As to your violation of Title 21
10   United States Code Section 846 -- excuse me -- entering into
11   an agreement between two or more persons to possess with
12   intent to distribute 50 grams or more of methamphetamine,
13   how do you now plead, guilty or not guilty?
14              THE DEFENDANT:  Guilty, Your Honor.
15              THE COURT:  Counsel, do you join in that plea?
16              MR. KLEIN:  Yes.
17              MR. GARRINGER:  I apologize, Your Honor.  There
18   was one matter that I neglected to refer to.
19              THE COURT:  What was that?
20              MR. GARRINGER:  The appellate waiver, Your Honor.
21              THE COURT:  Yes.
22              MR. GARRINGER:  I would just like to bring the
23   defendant's attention to paragraphs 23 and 24.  There is a
24   limited mutual waiver of appeal.  Defendant has waived under
25   the terms of the plea agreement certain appellate rights.
```

```
 1              THE COURT:  Okay.  Basically one of the things is
 2    the stipulation of 29 offense level.  You understand that.
 3              THE DEFENDANT:  Yes, Your Honor.
 4              THE COURT:  And you understand all that as part of
 5    the plea agreement that you said you wanted to enter into;
 6    is that correct?
 7              THE DEFENDANT:  Yes, Your Honor.
 8              THE COURT:  And you still wish to enter a plea
 9    today?
10              THE DEFENDANT:  Yes, Your Honor.
11              THE COURT:  The court finds a willing, free and
12    voluntary waiver on the part of the defendant.  The court
13    has explained the consequences and possible consequences of
14    his plea.  The court finds a factual basis based on the
15    statement of defendant -- excuse me, statement of the
16    government here in court and the admission of the defendant
17    to the statement of facts and also the stipulation of
18    counsel to those facts and will accept the plea of guilty.
19              THE CLERK:  Monday, May 5th at 1:30 P.M.
20              THE COURT:  Okay.  We'll see you back in on May
21    5th at 1:30.
22              MR. GARRINGER:  Your Honor, will the court
23    incorporate the plea agreement in its entirety into today's
24    proceedings?
25              THE COURT:  The court will incorporate the plea
```

```
 1    agreement as part the plea in this matter.
 2              THE CLERK:  Trial date vacated as to this
 3    defendant?
 4              THE COURT:  That's correct.  Thank you very much.
 5                  (PROCEEDINGS WERE ADJOURNED)
 6
 7                            CERTIFICATE
 8
              I hereby certify that pursuant to Section 753,
 9    Title 28, United States Code, the foregoing is a true and
      correct transcript of the stenographically reported
10    proceedings held in the above-entitled matter and that the
      transcript page format is in conformance with the
11    regulations of the Judicial Conference of the United States.
12    Date:  OCTOBER 1, 2008
13
                              _____
14                            LYNNE SMITH
                              OFFICIAL COURT REPORTER
15
16
17
18
19
20
21
22
23
24
25
```